## COMPENSATION TO DEPUTY STATE SUPERVISORS OF ELECTION.

Court of Appeals for Mahoning County.

STATE OF OHIO, ON RELATION OF JOSEPH E. JONES, v. I. M. HOGG, COUNTY AUDITOR.

Decided, December 12, 1913.

*Elections—Previous Provisions of the Statutes as to Pay of Deputy State Supervisors—Not Affected by the Constitutional Amendments.*

Provisions of Section 4900 of the General Code are not inconsistent with Article V, Section 7, of the amendments of 1912 to the Constitution, and by the provisions of that section of the statutes each member of the board of deputy state supervisors of elections is entitled to receive, as compensation for his services in conducting a primary election provided for by Section 4963 of the General Code, to be held in September of odd numbered years, the sum of $2 for each precinct in his county whether primary elections were actually held in all of the precincts of his county or not.

*David G. Jenkins*, for relator.
*A. M. Henderson*, Prosecuting Attorney, contra.

NORRIS, J.; POLLOCK, J., and METCALFE, J., concur.

The relator in his petition alleges that on the 2d day of August, 1912, he was duly appointed a member of the board of deputy state supervisors of elections for Mahoning county, for a term of two years; that on the 2d day of September, 1913, a primary election was held in Mahoning county, in accordance with law, and that the relator acted as member of such board of deputy state supervisors of elections in conducting said primary election; that on the day of such primary election there were 133 legally existing and constituted election precincts in said county, and that he was entitled, as compensation for his services in conducting such election, to the sum of $266, but that the defendant, I. M. Hogg, auditor of Mahoning county, refused to issue his warrant for such sum, claiming that relator was entitled to only $194 as the legal compensation; that relator has presented proper certificate and voucher and in all things com-

plied with the requirements of the law, and that there is money in the county treasurer's hands to the credit of the proper fund to pay the full amount of relator's claim for compensation.

It is nowhere alleged in the petition that primary elections were actually held in all of the 133 precincts of the county. To this petition a demurrer was filed by the respondent on the ground that the petition did not state facts sufficient to constitute a cause of action and the issue of writ of mandamus prayed for.

It is stated by counsel that while there are 133 election precincts in the county, 89 are in the city of Youngstown and 44 in townships outside of Youngstown, and it is said that the auditor refused to issue the warrant because of the provisions of Article V, Section 7, of the amendments to the Constitution adopted in September, 1912, which provides that:

"All nominations for elective state, district, county, and municipal offices shall be made at direct primary elections or by petition as provided by law, and provision shall be made by law for a preferential vote for United States Senator, but direct primaries shall not be held for the nomination of township officers or for the officers of municipalities of less than two thousand population, unless petitioned for by a majority of the electors of such township or municipality."

Is it necessary for the relator to allege in his petition that primary elections were actually held in all of 133 precincts? Section 4990 of the General Code provides as follows:

"For their services in conducting primary elections members of the board of deputy state supervisors shall each receive for his services the sum of $2 for each election precinct in his respective county."

This simply seems to be the method of fixing the compensation of these officers. It is a means clearly to express the legislative intent. We see no reason for giving it any interpretation other than what the plain language implies—that is that each such deputy state supervisor shall receive $2 for each precinct, and this without reference to whether elections were held in all of the precincts or not.

The election for which compensation is asked in this case was a general primary election held under the provisions of Section 4963, which provides that:

"Primaries held to nominate candidates for township and municipal offices, justice of the peace, and members of the board of education, shall be held in each county at the usual polling places, on the first Tuesday after the first Monday in September in odd numbered years."

Now, the provisions of the section of the Constitution we have quoted above, provided that in townships outside of municipalities such primary elections shall not be held unless petitioned for. Whether such primaries are petitioned for in this case does not appear, but is this Section 4990, at all inconsistent with that provision of the Constitution which merely provides a method of determining compensation of the supervisors for holding such general primaries? The constitutional amendment may possibly reduce the amount of services to be rendered, but does that necessarily change the provisions of the statute as to the compensation? We think not.

· The schedule adopted September, 1912, provides:

"The several amendments passed and submitted by this convention when adopted at the election shall take effect on the first day of January, 1913, except as otherwise specifically provided by the schedule attached to any of such amendments. All laws then in force, not inconsistent therewith shall continue in force until amended or repealed."

Without this constitutional amendment there could be no doubt as to the proper interpretation of this statute. How can it be said that this amendment amends the statute or gives it any different interpretation than it had before? As we have said, we think this statute is not inconsistent with the amendment and remains in full force and should receive the same interpretation as it had before the amendment was adopted. A peremptory writ of mandamus will be awarded as prayed for.